ARMAND SCHMOLL, INC., Appellant, *v.* COMMONWEALTH & DOMINION LINE, LTD., Respondent.

First Department, October 24, 1930.

*Neil P. Cullom* of counsel [*James E. Freehill* with him on the brief], for the appellant.

*L. deGrove Potter* of counsel [*Kirlin, Campbell, Hickox, Keating & McGrann,* attorneys], for the respondent.

McAvoy, J.  Plaintiff sues, as a consignee of certain green, salted hides, defendant shipping line for damages occurring to the cargo carried on defendant's ship, the *Port Hardy,* from Townsville, Australia, to Antwerp, Belgium.

The hides were sent forward August 19, 1925, and arrived at Antwerp on February 5, 1926, nearly six months after shipment. The approximate normal time for this transit by sea is four months.

The defense to the suit is that a strike was in progress at Bowen, Australia, a port of call and loading, for nearly two and one-half months, and that this strike caused the delay of the vessel.  Since the bill of lading exempts defendant from damage due to strikes, defendant asserts that it is not responsible for the deterioration and decay of the green, salted hides.

The jury found a verdict in favor of the defendant.

Plaintiff contended at the trial that the defendant was negligent in not taking action to avoid the damage while the vessel was unable to proceed from the port of Bowen.  There was proof covering this issue of negligence on the parts of plaintiff and defendant, which the jury heard and resolved.

We think, however, that the failure of defendant to protect the cargo during the delay was so fully shown by the plaintiff's proof that the verdict of the jury must have been brought about by a misunderstanding of the nature of plaintiff's duty with respect to proof, or some erroneous instruction from the court.  This proof shows that defendant was negligent in failing to notify the owner of the merchandise of the delay at Bowen, so that he might take measures to protect his goods in case defendant did not do so through its ship's officers.  The officers and crew were negligent during the delay in that they did not at any time open the hatch covers where plaintiff's hides were stowed to permit ventilation, which was necessary for the protection of the cargo while the ship was at

anchor. Nothing was done at Bowen to see whether or not the hides had been injured during the delay, by inspection or handling, although such inspection and proper handling could have been had there while the vessel's journey was interrupted. Although the stevedores were not on strike and did not refuse to handle cargo, they were not directed by the ship's officers to handle, unload or resalt the hides during the delay.

The steamer, although it docked from August twentieth to September fifteenth, did not discharge the hides so that they could be shifted and resalted on the wharf.

The cargo officer, who supervised the stowage of the cargo, was shown to be incompetent, inefficient and ignorant of handling hides and perishable cargo, and testified that, even though he had had salt available for the use of the hides, he would not have known how to use it. No effort was made by him to secure salt.

At London, to which the steamer proceeded, the hides were transferred to the steamship *Port Curtis* and they were stowed in the after part of a hold adjacent to a fire bulkhead which separated the engine and boiler room from this hold, which submitted the hides to excessive heat, and probably increased their deterioration in quality.

This proof would support a finding that the officers and crew were guilty of acts which constituted negligence of a carrier of perishable cargo. The proof indicated that all the officers did was to let the cargo decay in the vessel while it lay at Bowen. Although cargo vessel's officers should be competent to supervise the stowage of such cargoes as they undertake to carry, even if they were not so informed, they could have communicated with plaintiff and received instructions as to how to handle the cargo in the emergency. The strike does not justify abandoning the cargo. The vessel's officers must do that which a reasonable person in charge of such a cargo, under such circumstances, would do to preserve the cargo from destruction or deterioration. What is required of a carrier is that in an emergency his agents must exercise a reasonable amount of skill and diligence, and do all that is reasonable and practical to insure the safety of the goods. A shipowner will not be relieved from liability because of an exemption in his bill of carriage, where there has been neglect on the part of his officers and crew to take such steps as would be likely to avoid damages, to guard against their effects, or arrest their consequences. Nothing was done here by the carrier to protect the cargo when the strike disabled the vessel from proceeding, and thus the carrier did not guard against the effects of allowing these perishable goods to deteriorate, nor to arrest the consequences of leaving them

without some sort of preservation. Negligence was thus fairly established, and the shipping line was liable, notwithstanding the exemption; and this should have been found by the jury.

While there are several other errors which involve the admission of improper testimony, and erroneous instructions or failure to give proper instruction to the jury, we think that on a new trial these may be avoided, and, therefore, they are not adverted to herein.

We conclude that the proof is such that a finding against the plaintiff's evidence was erroneous, and that the judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

DOWLING, P. J., MARTIN and O'MALLEY, JJ., concur; FINCH, J., dissents.

FINCH, J. (dissenting). I vote to affirm the judgment reached before the learned trial court, upon the ground that only issues of fact were involved which were properly submitted to the jury and that their verdict cannot be said to be against the weight of the evidence but, on the contrary, is in full accordance therewith.

No errors of law are presented which require a reversal of this judgment.

The plaintiff is suing for damages to a shipment of hides while in possession of the defendant as a common carrier. In defense the defendant pleads that the delay in transportation was caused by a general strike of seamen. Against damages arising from such a cause, the defendant was exempted both under the English Carriage of Goods by Sea Act, 1924 (14 & 15 Geo. 5, chap. 22) and also under the agreement of the parties as expressed in the bill of lading. Since a carrier's liability was expressly exempted in the event of a strike, the plaintiff had the affirmative burden, as was properly imposed upon it by the court, of showing that the defendant was negligent notwithstanding the strike. (*Austin Nichols & Co., Inc.,* v. *Compania Trasatlantica,* 218 App. Div. 660; affd., 245 N. Y. 624; *The Florinda,* 31 F. [2d] 262; *The G. R. Booth,* 171 U. S. 450.) To my mind the evidence preponderates in showing that the defendant was not negligent. The ship arrived at the dock at Bowen, Australia, and the loading of the cargo had proceeded but a short time when a general strike ensued. At first only a portion of the seamen deserted the ship, the remainder sleeping and eating aboard her. The intensity of the strike increased and the remainder of the seamen left the ship. The stevedores, while not technically on strike, sympathized with the seamen, as did apparently the whole community of working men. Fear for the safety of the ship and for their own lives caused the seventeen officers, including the engi-

neers, to leave the dock and to anchor about ten miles down the harbor, where, for approximately two months, not one of these men dared to go ashore. All this time the master and officers were trying to obtain a crew so that they might continue the voyage and as a matter of fact they finally succeeded in obtaining a sufficient crew so that they could continue the voyage before the strike came to an end. Whether under these circumstances they did all that was called for was for a jury to say. The appellant urges that these officers could have removed these hides from the portion of the ship where they were stowed, taken them from the great piles where they lay on top of one another, spread them out, resalted them and repacked them. An expert, conceded by both sides to be qualified, testified that in the first place there must be adequate space in which to lay out this great number of hides. In the second place, that unless those who undertook this work were qualified, the hides would be more damaged than if they had remained unsalted. There was nothing to show in this record that there was the necessary space on the ship or that any of these officers had the qualifications to interfere with the cargo to that extent. Nor is it shown, even if the space were available, that salt could have been produced at the port in question. The normal thing under the circumstances of a strike such as this would appear to be to have left the cargo just as they did, rather than to interfere by attempting to resalt a cargo about which they knew nothing. The hides were originally salted and stowed under the personal supervision of a representative of the shipper. There is no claim that the vessel was not properly manned and equipped to commence the voyage. Moreover, there was no duty on the part of the defendant to have available employees possessed of the necessary knowledge to salt the hides when there is no evidence to show that a strike could reasonably have been anticipated, and hence the need of resalting was not looked for and had not been provided for in the contract of shipment.

The plaintiff specified eleven additional respects in which it claimed the defendant was negligent, but each one of these specifications depended upon the circumstances surrounding the strike, and hence became a question of fact, with the evidence preponderating in favor of the finding of the jury.

The appellant next points out that the court erred in failing to charge the jury that the strike was no defense if the vessel could, with due diligence, have left Bowen and proceeded on her voyage before the strike took place. The court was correct in refusing so to charge. Such a charge would have emphasized an issue that was not in the case. There is no evidence whatever that the vessel unreasonably delayed at Bowen. On the contrary, the

proof is clear that the strike occurred before the loading there was completed.

The appellant also urges that even if it be assumed that the damage to the hides was caused by the strike of the seamen, nevertheless the carrier cannot rely upon that as a defense until it has proven as a condition precedent that the steamer was seaworthy or that it had used due diligence to make the steamer seaworthy. A complete answer to this contention is that under the evidence in the case at bar this record clearly shows the vessel was seaworthy in every particular and no issue was raised to meet the facts and the fair inference therefrom that the vessel entered upon and completed the voyage in an entirely seaworthy manner.

The appellant also urges that this steamer should have gone direct to Antwerp, instead of going to London and transshipping the hides. The carrier here, however, proceeded in exact accordance with her contract of carriage and would have been liable had she not so proceeded.

The plaintiff also urges that these hides, when they were transshipped from London to Antwerp, were stowed adjacent to the fire bulkhead which separated the engine and boiler room from hold No. 3, thus submitting the hides to excessive heat. This, however, was a question of fact, with the evidence showing that the hides were carried in a similar compartment on the steamer to which they were transshipped as on that from which they were taken, namely, shelter decks 3 and 5. They remained on the transshipped vessel only for three or four days, and the evidence preponderates in showing that no damage occurred while the hides were on that vessel.

The appellant also urges that the court erred in charging the jury that the defendant could not be held liable except upon affirmative proof of negligence upon the part of the master of the ship. While the court did charge a request that the defendant could not be held liable unless it was affimatively proved that the master had been guilty of a breach of duty, yet the court qualified this charge and said that he would charge it in those words because it was the master who had to give orders for everything that was done towards the preservation of the goods. This explained the charge and made it without error. A fair reading of this charge was to leave to the jury the question whether those who were in charge of the vessel failed in any duty which they owed to this cargo.

The judgment appealed from should be affirmed.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event.