COPCO STEEL & ENGINEERING
COMPANY, Libelant,

v.

The PRINS FREDERIK HENDRIK and
Maatschappij Zeetransport N.V., in a
cause of contract and cargo damage, civ-
il and maritime, Respondents.

Civ. A. No. 9762.

United States District Court,
E. D. Michigan, S. D.

Feb. 23, 1955.

John A. Gilray, Jr., Miller, Canfield, Paddock & Stone, Detroit, Mich., for libelant.

Charles D. Meadows, Foster & Meadows, Detroit, Mich., for respondents.

LEVIN, District Judge.

Copco Steel & Engineering Company, libelant, seeks recovery for damage to structural steel shapes owned by libelant and carried aboard the respondents' S.S. "Prins Frederik Hendrik" between the ports of Antwerp, Belgium and Detroit, Michigan during the month of September 1949. Libelant alleges that upon arrival at Detroit (1) a quantity of the steel shapes was heavily rusted and (2) that one ton of steel was bent and distorted beyond repair or salvage.

The initial issue for determination in this case is whether an exception to a carrier's liability provided for in a bill of lading, but not included within the express statutory exemptions to carrier's liability, places the burden of proof upon the shipper to show that damage

of the type within the exception was caused by the carrier's fault or neglect. A second issue raised in this case is whether all "rust damage" is included within the meaning of "* * * damage arising from inherent defect, quality, or vice of the goods" as an exemption to a carrier's liability under the Carriage of Goods by Sea Act, 49 Stat. 1207, 46 U.S.C.A. § 1300 et seq.

The steel shapes were delivered to respondents in good condition and were bundled unprotected by oil or other preservatives. Respondents issued a bill of lading covering this shipment, with provisions against respondents' liability for damage to the goods caused by rust, corrosion, bending, crushing or insufficiency of packaging. Upon arrival in Detroit the steel shapes were jointly inspected by representatives of libelant and respondents. The steel shapes in fifty-two bundles of the total shipment were deeply rusted. Of those fifty-two deeply rusted bundles, thirty-nine were stowed in No. 2 hold of respondent vessel directly beneath thousands of crates of allegedly wet tulip bulbs. The remaining thirteen bundles of steel shapes that were damaged by excessive rust were stowed in No. 3 hold beneath allegedly leaking drums of ethylene glycol, a chemical compound which, the testimony established, inhibits the formation of rust.

The damage due to the deep rusting and bending was reported to respondents by libelant in writing on September 30, 1949 at the time the ship was being unloaded. It was necessary for libelant to subject the deeply rusted steel shapes to a pickling operation in order to remove the rust and to recondition those steel shapes for subsequent use. This operation was performed by libelant at a cost of $1,938 which was a reasonable price for the operation at that time. The one ton of steel damaged by bending represented a loss of $106.

Libelant established that the goods were delivered to respondents in good condition and received in damaged condition. Under the established rule it then becomes the duty of respondents to carry the burden of proof and show (1) that the damage was produced by a cause from which the respondents were *exempted by law* or (2) that damage from a non-exempt cause resulted without the fault or neglect of the carrier.

The pertinent portions of the Carriage of Goods by Sea Act, supra, are as follows:

"Every bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade, shall have effect subject to the provisions of this chapter." 49 Stat. 1207, 46 U.S.C.A. § 1300.

"Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties and obligations provided in this section, *or lessening such liability otherwise than as provided in this Act,* shall be null and void and of no effect. * * *" § 3(8), 46 U.S.C.A. § 1303(8). (Emphasis added.)

"(2) Neither the carrier nor the ship shall be responsible for loss or damage arising or resulting from—

* * * * *

"(m) Wastage in bulk or weight or any other loss or damage arising from inherent defect, quality, or vice of the goods;

"(n) Insufficiency of packing;

* * * * *

"(q) Any other cause arising without the actual fault and privity of the carrier and without the fault or neglect of the agents or servants of the carrier, but the burden of proof shall be on the person claiming the benefit of this exception to show that neither the actual fault or privity of the carrier nor the

fault or neglect of the agents or servants of the carrier contributed to the loss or damage." § 4(2), 46 U.S.C.A. § 1304(2).

"This Act shall apply to all contracts for carriage of goods by sea to or from ports of the United States in foreign trade. * * *" § 13, 46 U.S.C.A. § 1312.

The statute is clear and the carrier may not by including within the bill of lading a non-statutory exemption avoid the burden of proof imposed upon it by the Act, § 4(2) (q). See George F. Pettinos, Inc., v. American Export Lines, Inc., D.C., 68 F.Supp. 759, affirmed 3 Cir., 159 F.2d 247.

The cases urged upon the Court by respondents are not in point. The Monte Iciar, 3 Cir., 167 F.2d 334; Thomas Roberts & Co. v. Calmar S. S. Corporation, D.C., 59 F.Supp. 203. Those cases arose under the Harter Act, 27 Stat. 445, 46 U.S.C.A. § 190 et seq.,[1] the predecessor of the Carriage of Goods by Sea Act.

Under the Carriage of Goods by Sea Act, the burden of proving absence of liability for damage for any cause other than through statutory exempted causes is expressly upon the carrier. § 4(2) (q), 46 U.S.C.A. § 1304(2) (q), set forth above.

We then come to the question as to whether damage to the steel shapes arose through causes specifically designated as exemptions to the carrier's liability by § 4(2) (m), (n), of the Carriage of Goods by Sea Act.

Respondents assert that the damage to the steel shapes by bending was caused by insufficiency of packing within § 4(2) (n) of the Act. The testimony in this case clearly established that the steel shapes were bound in open bundles by steel straps and that such was the usual, normal and customary method of packing. I find that the bending damage was not caused by insufficiency of packing, and the respondents have not, therefore, established the cause of damage to the steel shapes as within the statutory exemption.

Respondents claim that the rust damage was damage caused by an "inherent defect, quality, or vice of the goods" within the meaning of the carrier's exemption under § 4(2) (m) of the Act. The rust damage that occurred in the fifty-two bundles of steel shapes was excessive in amount and degree beyond that customarily occurring in similar transatlantic shipments to the port of Detroit. The deep rusting that occurred in the present shipment is to be distinguished from the relatively harmless surface rust generally prevalent on steel shapes shipped in a like manner. The surface rust generally encountered may be removed by an incidental brushing operation at little or no cost to the shipper, whereas the heavy rust present on libelant's steel shapes necessitated the expense of a pickling operation for cleaning and removal of the rust in order to recondition the shapes for subsequent use.

In regard to the rust-damaged steel shapes in No. 2 hold, libelant did not rest upon its *prima facie* case but went further in its proofs and established that the stowage of wet tulip bulbs with the steel shapes caused heavy rusting due to the presence of excessive moisture.

I am of the opinion that the heavy rust damage to the structural

---

[1] "It shall not be lawful for any vessel transporting merchandise or property from or between ports of the United States of America and foreign ports, her owner, master, agent, or manager, to insert in any bill of lading or shipping document any covenant or agreement whereby the obligations of the owner or owners of said vessel to exercise due diligence properly equip, man, provision, and outfit said vessel, and to make said vessel seaworthy and capable of performing her intended voyage, or whereby the obligations of the master, officers, agents, or servants to carefully handle and stow her cargo and to care for and properly deliver same, shall in any wise be lessened, weakened, or avoided." 27 Stat. 445, 46 U.S.C.A. § 191.

steel shapes was not caused by an inherent defect, quality, or vice of the goods within the meaning of the exemption of the carrier's liability under the Carriage of Goods by Sea Act.

█ The liability of respondents in the present case is based upon the failure to sustain the burden of proof imposed upon a carrier by the Carriage of Goods by Sea Act. Respondents failed to introduce evidence establishing due care of the cargo during the voyage. Compare Wessels v. The Asturias, 2 Cir., 126 F.2d 999.

The apparent anomaly appearing from the testimony, that ethylene glycol inhibits rather than induces rust formation, is not inconsistent with the decision herein. The Court need not speculate as to the exact time or place of damage during the voyage. It is sufficient to say that excessive rusting of the steel plates in No. 3 hold may have occurred prior to the time of contact of the plates with the inhibitor.

Libelant may have judgment for $2,044.00 with interest and costs.