## THE SEABOARD.

(District Court, S. D. New York. December 3, 1902.)

1. SHIPPING—LOSS OF CARGO—LIEN.

The fact that a steamer was being operated under a charter, even if known to shippers, does not relieve her from a lien arising from default in her obligation to the cargo.

2. SAME—STIPULATIONS IN BILLS OF LADING—NEGLIGENCE.

Stipulations in bills of lading that the carrier shall not be liable for any damage to goods which is capable of being covered by insurance will not relieve the vessel from liability for loss due to the carrier's negligence.

3. SAME—HARTER ACT.

Loss of cargo, resulting from the overloading of a lighter, due to the negligence of officers of the ship, is within section 1 of the Harter act [U. S. Comp. St. 1901, p. 2946], and not within section 3, and cannot be relieved against by a stipulation in the bills of lading.

4. SAME—LIEN FOR LOSS OF CARGO—DEFENSE OF LACHES.

A purchaser of a vessel cannot invoke the defense of laches to defeat a suit by an insurer to enforce a lien for the negligent loss of cargo, occurring before the purchase, where the suit was commenced within a year after the loss, and it does not appear that he bought without knowledge of the lien.

In Admiralty. Suit in rem for loss of cargo.

Coudert Bros., for libellant.
Robinson, Biddle & Ward, for claimant.

ADAMS, District Judge. This was an action brought by the libellant, by rights of subrogation, to recover certain amounts paid by it to various shippers of goods on the steamer Seaboard for delivery at Carrabelle, Florida, in September, 1899.

The principal facts have been agreed upon and may be stated briefly as follows:

The steamer, prior to and during September, 1899, was being run by one W. C. Taylor, as charterer under the name of the Mobile Steamship Company, as a common carrier of such freight as she might, from time to time, receive for transportation between Mobile and Carrabelle and other points; that upon each trip from Mobile, the steamer was put upon the berth as a general ship, and advertised as such, and received such cargo as was offered her, giving receipts in a form which, among other things, provided that "The carrier is not to be liable for any damage to any goods which is capable of being covered by insurance" and that the agent of the vessel should have "the option of hiring lighters at the port of destination for the landing of the * * * goods, at the expense and risk of the owners of the said goods"; that about the middle of September, 1899, or a little later, the steamer Seaboard was placed upon berth for cargo in Mobile, and the goods in question were shipped upon her to certain consignees, in good order and condition, to be transported to Carrabelle and there delivered to the respective consignees, or to a connecting carrier, to be forwarded to the consignees; that the Walker Steamship Company owned the steamer in May, 1899, and continued to own it until May 25, 1900, during which time she was

chartered to said Taylor, who had the right, and exercised it, of appointing all her officers and crew except the chief engineer; that upon the 25th of May, 1900, the owner sold the steamer to the present claimant; that the several shippers had heard that some of the steamers being operated by Taylor, under the style of the Mobile Steamship Company, were chartered vessels but did not know whether the Seaboard was under charter, or not; that each of the shippers insured with the libellant the respective goods shipped by them, in amounts which were fair values of the goods with ten per cent. added, and the several lots of goods were fairly worth at Carrabelle, the several amounts for which they were insured, plus the freight thereon less the added ten per cent.; that the steamer transported the goods safely to Carrabelle and there unloaded them into a lighter and the lighter sank before it reached the wharf, resulting in a loss of the goods, upon which no freight was paid; that the libellant paid to the several shippers the amounts for which the said goods were so insured; that the steamer could not reach a wharf at Carrabelle on arrival there owing to the shoalness of the water and had to unload into lighters in order that the goods might be landed, which was customary at that port with steamers of the Seaboard's draft; that the lighters upon which the goods were loaded were procured for that purpose by the agent of the said Taylor at Carrabelle; that after the loss of the goods the steamer was operated between Mobile and Tampa, Florida, until May 25, 1900, when she left for New York and in being so operated, she was in Mobile six times during 1899 and nine times in 1900, up to April 16th.

The only substantial controversy upon the facts arose with respect to the seaworthiness of the lighter and some testimony was taken in that connection but I do not think it needs discussion because it clearly appears that the lighter became unseaworthy through being negligently overloaded by the officers and crew of the steamer and it was from such cause that the loss occurred. Two lighters were used for the purpose of delivering the cargo, and the one in question sank alongside of the ship a few minutes after the loading was finished.

Various defenses have been put forward by the claimant to escape liability: (1) the fact of the vessel being chartered and the shippers being put upon inquiry with respect to the provisions of the charter; (2) the effect of the insurance in connection with the provision in the bill of lading relating thereto; (3) the effect of the Harter Act, and (4) laches.

(1) The fact of the steamer being operated under a charter, even if the fact were known to the shippers, would not serve to relieve the steamer from a lien arising from default in her obligation to the cargo —Freeman v. Buckingham, 18 How. 182, 15 L. Ed. 341; The Alert, 9 C. C. A. 390, 61 Fed. 113.

(2) The stipulation with respect to insurance will not excuse loss by the carrier's negligence. The Hadji, (C. C.) 20 Fed. 875; The Egypt, (D. C.) 25 Fed. 320.

(3) This loss is within section 1 of the Harter Act [U. S. Comp. St. 1901, p. 2946]. and not within section 3. The primary cause of the loss was negligence in the delivery of the cargo, for which no exemp-

tion can be had by stipulations in the bills of lading—Knott v. Botany. Worsted Mills, 179 U. S. 69, 21 Sup. Ct. 30, 45 L. Ed. 90; The Germanic, (D. C.) 107 Fed. 294.

(4) It does not appear that the claimant purchased the vessel without knowledge of the liens and it is not therefore in a position to invoke the doctrine of laches. Moreover, the delay between the time of the accident, September, 1899, and the filing of the libel, July 28, 1900, was not so unreasonable as to affect the libellant's rights in view of the circumstances of the case.

Decree for libellant, with interest. An order of reference may be entered, if the amount of loss is disputed.