Austin Nichols & Co., Inc., Respondent, v. Compania Trasatlantica, Appellant.

First Department, December 31, 1926.

Ships and shipping — action by shipper to recover for loss of olive oil in trans-Atlantic shipment — bill of lading exempted defendant from loss due to breakage or leakage — mere proof of loss by either cause does not establish liability of defendant — burden was on plaintiff to show affirmatively that breakage or leakage was due to negligence on part of defendant — evidence does not show negligence — if loss was caused by exposure to sun while on lighters, plaintiff cannot recover, since defendant's responsibility ended as soon as oil was removed from ship.

In this action to recover damages for the loss of olive oil shipped on defendant's steamship from Spain, which loss was caused by breakage of the containers or leakage therefrom, the plaintiff cannot recover on proof only of the breakage or leakage, since the bill of lading expressly exempted the defendant from liability caused by breakage of the articles and fragile containers, or for breakage or leakage. In view of the exemption, the burden was cast upon the plaintiff to show affirmatively that the loss was due to the negligence of the defendant and the evidence in this case does not establish any negligence on the part of the defendant.

The contention of the plaintiff, if true, that the loss was caused by exposure of the containers to the sun while they were on lighters in New York harbor, does not make the defendant liable, since the contract between the parties specifically stated that the responsibility of the defendant should terminate the moment the oil was removed from defendant's steamship, and, furthermore, even though that were the cause, it was necessary for the plaintiff to show that the negligence of the defendant was the proximate cause of the loss.

Appeal by the defendant, Compania Trasatlantica, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 8th day of January, 1926, upon the verdict of a jury, and also from an order entered in said clerk's office on the 4th day of January, 1926, denying defendant's motion for a new trial made upon the minutes.

*John W. Crandall* of counsel [*H. Victor Crawford, II*, with him on the brief; *Hunt, Hill & Betts*, attorneys], for the appellant.

*Wilson E. Tipple* of counsel [*Adolph Hansen* with him on the brief; *Tipple & Plitt*, attorneys], for the respondent.

McAvoy, J. Plaintiff obtained a judgment in this case against the defendant in a suit for the damage to a consignment of forty puncheons containing olive oil, which were put aboard defendant's steamship *C. Lopez y Lopez* at Malaga, Spain, in July, 1917, for transportation to New York. The claim of loss is founded upon

the assertion of plaintiff that, when put aboard, the forty puncheons contained 7,193 gallons of olive oil, but that when delivered to the plaintiff at New York only 5,374.5 gallons of oil were in the containers. It is claimed that the forty puncheons were damaged and broken through the negligence of the defendant in loading, stowing, transporting and discharging the merchandise, and through lack of care in its custody and control, which negligence resulted in part of the contents leaking out of the puncheons.

The defendant set up in its answer, in addition to denials, a clause in the bill of lading which was issued for these goods, containing certain exemptions from liability. Specifically it alleged that such damage as was caused to the containers was due to breakage because of the fragile nature of the containers, and that under the mentioned clause defendant was exempted from liability. Defendant also pleaded at trial an additional exemption which was stamped on the face of the bill of lading, which read that the carrier was " not responsible for breakage or leakage." At the trial the plaintiff's claim was limited to eleven puncheons that were broken, from which it was said that 1,338 gallons had leaked. Although defendant produced no witnesses, since the suit was brought nearly five years after the shipment arrived in New York, it contended that plaintiff's own proof showed that the damage and loss fell within the exemptions of the defendant's bill of lading issued for these goods, and that upon this showing it was necessary for plaintiff to establish that the damage was caused by the negligence of the defendant in the loading, stowage or handling of the cargo. Besides, it was the defendant's contention at the trial that plaintiff did not competently prove what amount of oil was in the puncheons when they were delivered to the ship in Malaga as a basis for making any claim for an alleged shortage at the time of the delivery at New York. These contentions the learned trial court overruled and instructed the jury that it was to find upon the evidence whether or not the defendant was guilty of negligence with respect to the handling of plaintiff's goods, and under this ruling the jury found the verdict upon which judgment was had.

We think that it was erroneous to submit the question of negligence to the jury under the proof made at trial, because it seems obvious that the damage to the plaintiff's merchandise fell within the exemptions of the bill of lading, and that in order to recover in the light of these exemptions, it was necessary for plaintiff to show affirmatively that the damage was caused by the negligence of the defendant.

We do not find any proof in the case upon which a finding of

negligence of defendant, the ship owner, resulting in the breakage of the containers, could be made.

Plaintiff's complaint shows that this claim was based on breakage. Its complaint alleges in paragraph 11 as follows:

" *Eleventh.* That the defendant, its agents, servants and employees negligently conducted itself or themselves in the loading, stowing, custody, control, transportation, discharge and care of said property and so negligently dealt with, cared for and transported said property that as a result thereof said 40 puncheons were damaged and broken and part of the contents thereof, to wit, 1485.5 gallons of olive oil was caused to flow out therefrom and become destroyed and lost, to the damage of this plaintiff."

Clause 7 of the bill of lading read: " The Company is not responsible for damages or losses caused by  *  *  *  breakage of the articles and fragile containers," and, as heretofore indicated, there was stamped on the face of the bill of lading the words: " Not responsible for breakage or leakage."

The proof of the plaintiff itself showed that the loss occurred through breakage, and because of this it was necessary for plaintiff to show that the breakage was caused by the negligence of the defendant, otherwise the bill of lading exemption would relieve it of liability. Under such clause the shippers in effect contracted that they would stand the loss arising from the breakage, and if loss occurred through the fragile nature of the containers, such loss also falls upon the shipper by this agreement.

Where a loss arises from an excepted peril, the ship is *prima facie* excused, and can be held liable only upon affirmative proof that some negligence on the ship's part was the efficient cause of the loss. The rule is that if the cause of the injury is not proven, the ship stands excused because of the exceptions in the bill of lading whereby the shipper in effect contracts that he will stand the risk of any loss arising from the cause named. Where the shipper shows that the damage might have been avoided by skill and diligence upon the part of the persons employed in the transport of the goods, the loss is not deemed to be such a one as will exempt the carrier from liability, but rather a loss occasioned by his negligence and inattention to duty. (*Clark* v. *Barnwell*, 12 How. [U. S.] 272, per Mr. Justice Nelson.)

When the carrier shows that the loss was occasioned by one of the perils for which it was exempted by the bill of lading, the burden lies upon plaintiff to establish negligence as an affirmative proposition.

The nature of the injury here indicated for itself that it belonged within the specified exemption from liability known as breakage,

and there was no evidence here to indicate that such breakage came about through the negligence of the ship's employees.

Plaintiff's position, however, is that the negligence may be inferred from the mere fact that the cargo was delivered broken, although breakage is within the exemption of the bill of lading; but the rule in admiralty is otherwise, and likewise the rule in New York is that where a bill of lading contains an exemption from liability for loss for a certain cause, and if the loss occurs from the cause exempted, it is incumbent upon the plaintiff, in order to avoid the effect of the exemption, to show that the loss was the result of the defendant's negligence, or that the loss resulted from some breach of the defendant's duty. The plaintiff, therefore, because of the exemption, was bound to show, in order to recover, such facts as would take the case out of the operation of the exemption clause. (*Whitworth* v. *Erie Railway Co.*, 87 N. Y. 413; *Lamb* v. *Camden & Amboy R. R. & T. Co.*, 46 id. 271.) In the absence of any explanation of the manner of the breakage, or any evidence tending to show that the defendant could have made such explanation, or by the exercise of reasonable care avoided the injury causing the breakage, no presumption of negligence was raised. (*Whitworth* v. *Erie Railway Co., supra.*) In cases where the inference of negligence was deemed to arise from the mere proof of damage or loss of goods intrusted to the carrier, the contract of carriage did not contain exemption from liability for the particular cause of the damage, such as a total default in the delivery of goods or such injury as could only happen by its very nature from negligent conduct of the shipment.

We think that there was no evidence which would warrant the jury in finding any negligence of the defendant which caused the breakage of the casks, nor do we find that there was any proof made out that leakage of the puncheons was caused through failure of proper delivery by the defendant of the cargo.

The plaintiff offered a theory, in order to hold the defendant liable for leakage, that the merchandise was not delivered within a reasonable time after the arrival of the steamer, by reason whereof it was exposed to summer heat, which caused the leakage of the oil from the puncheons. This contention was based upon the claim that there was no delivery of the oil prior to August 31, 1917, and that the defendant was liable for the leakage of the oil claimed to have occurred by reason of the defendant's discharging it onto lighters, where it remained for several days; but this proof did not establish liability, because under " delivery " of the cargo, as provided in the bill of lading, it was agreed that from the moment the goods left the deck of the vessel, marine risks, damages,

etc., were for the account of the receivers, and that delivery must be taken upon the unloading of the goods, and that no responsibility would be had for misplacement or damage to goods that had not been received by the interested parties at the moment of unloading. It also was provided that the merchandise would be unloaded and delivered on lighters, the expenses for such to be a charge for the account of the consignee; and a further clause set out that the shipping company had the right to unload the merchandise from the moment of arrival of the steamer at the port of destination, whatever the circumstances of location and time; and that all damages sustained by the merchandise, whether for natural or fortuitous causes occurring during discharge, while on dock or under shed, were not to be to the charge of the steamship company.

The injury that happened to the oil, if it was caused by permitting the oil to remain on lighters for several days through heat, was an injury that happened to the cargo, the risk of which the shipper had agreed in advance to assume. The plaintiff under this bill of lading was obliged to watch for the arrival of the ship to be ready to take its goods immediately upon the ship's discharging them.

Under clause 11, relating to delivery upon the unloading of the goods, the parties agreed that delivery should be made onto lighters instead of onto the wharf. Since the puncheons were placed on the lighters, plaintiff was under the duty to take them away and could not impose liability upon defendant by leaving them. After the goods left the deck of the steamer they were, under the bill of lading, at the risk of plaintiff, and the loss of the oil through leakage because of exposure to the summer heat was the fault of the plaintiff, which had the duty to promptly remove the casks under the terms of the bill of lading. In any event, since leakage was also in the exempted class of damage under the bill of lading, the ship owner was protected from all losses to the shipper from leakage, except that caused by negligence, and since no negligence was shown, there is no cause of action founded on this ground.

The judgment and order should, therefore, be reversed, with costs, and the complaint dismissed, with costs.

Clarke, P. J., Dowling, Merrell and Burr, JJ., concur.

Judgment and order reversed, with costs, and the complaint dismissed, with costs.