**MORRIS et al. v. LAMPORT & HOLT, LIMITED.**

District Court, S. D. New York.

Oct. 23, 1931.

Bigham, Englar, Jones & Houston, of New York City (Henry N. Longley and James N. Senecal, both of New York City, of counsel), for libelants.

Slayton & Jackson, of New York City (G. Noyes Slayton, of New York City, of counsel), for respondent.

PATTERSON, District Judge.

Suit is brought to recover for cargo damage. The libelant is the indorsee and holder of bills of lading covering a shipment of skins. The respondent, which issued the bills, operates a line of steamships between Brazil and New York. By the bills in question it undertook to carry the skins on the steamer Swinburne from Ceara, a port in Northern Brazil, to New York. The skins were damaged by water while on a lighter in transit from the shore at Ceara to the Swinburne.

Ceara is an open and very shallow harbor. Ships of the draught of the Swinburne stand out a mile or more from shore while lighters bring cargoes out to them. The lighters are loaded from a dock and then are

pulled by man power along a large rope or cable stretching from the dock to a buoy 100 fathoms out. Smaller ropes attached to the lighter pass around the large rope and act as loops to keep the lighter from drifting off. On reaching the buoy, the lighter is taken in tow by a tug, and thus is brought to the steamer.

The skins involved in this case were delivered by the shipper to the respondent's agents at Ceara, who signed and delivered the bills of lading. A day or so later the skins were placed on a lighter owned by a Brazilian company and rented to the respondent for the trip. Tarpaulins were spread over the skins. On December 21, 1926, the lighter started on the trip to the Swinburne. While being hauled by the crew along the large rope between the dock and the buoy, and when about one-half out, it was struck by two heavy waves in succession. The large rope broke, leaving the lighter at the mercy of the waves. It was finally beached after it had sustained considerable damage and after some of the skins had been injured by contact with water. The cargo was then placed on another lighter and taken to the Swinburne. All that we know about the rope is that it was of manila and five inches in diameter; it is said to have been practically new, in use only about a month; at times when it was not in use, it was taken from the water and dried out; it was the common property of all who used lighters at Ceara. The sea is described as rough at the time, as is usually the case in the locality.

██ 1. The respondent is a common carrier, and the damage occurred while the goods were in its custody under bills of lading. It is therefore liable for the loss, unless the case falls within one of the exceptions set forth in the bills of lading, in so far as such exceptions may be valid under the Harter Act (46 USCA §§ 190–195). The burden of bringing the case within one of such exceptions is on the carrier. The Patria (D. C.) 125 F. 425; The Rosalia (C. C. A.) 264 F. 285, 288.

██ An exception said to cover the case is that exempting the carrier from liability for loss caused by perils of the sea. The damage came about through the breaking of the rope under the strain caused by the large waves striking the lighter. Yet the testimony shows that waves of great force were common at the place. At least one witness said that the wind and waves were about the same as when the lighter started out on its trip. Under these circumstances, the loss cannot be said to be the result of a sea peril. That term connotes some violence of the elements which was not reasonably to be expected. "The peril which forms a good exception in a bill of lading means something so catastrophic as to triumph over those safeguards by which skillful and vigilant seamen usually bring ship and cargo to port in safety." The Rosalia, supra. See, also, The Frey (C. C. A.) 106 F. 319; The Skipsea (C. C. A.) 9 F.(2d) 887.

██ Another exception relied upon is that which absolves the carrier in case of loss due to "risk of craft to or from the ship." The bill of lading goes on to say that the exemption applies whether or not the loss is due to negligence of lighterman. To the extent that the clause purports to relieve the carrier in cases of negligence of the lighterman, it is void under the Harter Act. The transportation of the skins from the shore to the ship by lighterage was a job undertaken by the carrier, after the skins had passed into its custody. The fact that it delegated this part of the carriage to another is of no moment. Bulkley v. Naumkeag Co., 24 How. 386, 16 L. Ed. 599; Petersburg Line v. Norfolk-Virginia Peanut Co. (C. C. A.) 172 F. 321. The truth is that this lighterage was part of the loading of the ship, and section 1 of the Harter Act (46 USCA § 190) renders void all provisions relieving carriers from liability for loss caused by negligence in loading cargo. See Insurance Co. of North America v. North German Lloyd (D. C.) 106 F. 973, 976; The Seaboard (D. C.) 119 F. 375. So the exception is valid only in so far as the loss arose from risk of craft to and from ship and not chargeable to negligence.

██ The question then is whether the damage was due to negligence on the part of the lighterman. In my opinion it was. The rope was undoubtedly an appurtenance of the lighter itself, at that time under the immediate control of those on the lighter. It was not a fixture of the harbor, for the proof shows that it was removed from the water when not in use. As already pointed out, the waves encountered on this trip were not unusually high. The case is therefore within the rule of res ipsa loquitur. The Rambler (C. C. A.) 290 F. 791. The inference of negligence raised by the rule is not rebutted by the testimony brought forward by the carrier. True, the rope is said to have been practically new. But there is no evidence that it was inspected just before the lighter set forth. Nor is there evidence tending to show that the lighter was carrying only its customary load. If the load was heavier than

usual, the added strain on the rope would account for the mishap that occurred.

Upon all the evidence, I cannot say that the carrier has established that there was no negligence on the part of the lighterman, and my conclusion is, therefore, that the carrier is liable for the damage.

2. The libelant also insisted that there was a deviation by the Swinburne, and that consequently the carrier lost the benefit of the exceptions contained in the bills of lading. The claim of deviation is based upon the fact that, instead of proceeding directly to New York, the Swinburne went from Ceara to ports in Brazil considerably further south, and also went to a port far up the Amazon. But there is ample evidence to support a finding that the Swinburne did no more than follow its customary route, and there can be no deviation, unless there is a substantial departure from the regular route. The Turret Crown (C. C. A.) 297 F. 766; S. S. Willdomino v. Citro Chemical Co., 272 U. S. 718, 727, 47 S. Ct. 261, 71 L. Ed. 491. Without reference to the clause granting liberty to call at other ports, therefore, I am persuaded that there was no deviation in the case, and that this issue must be decided against the libelant.

3. A final point relates to the notice of claim. The bills of lading contain a clause to the effect that claims in writing must be presented "within three days after the steamer shall have finished discharging." The libelant gave written notice several days prior to the arrival of the steamer which satisfied the requirement. The clause does not mean that notice can be given only in the three-day period commencing the day when discharge of cargo is completed. It is thus unnecessary to pass upon the validity of the clause.

The libelant will have a decree, with the usual reference to a commissioner for finding the amount of the damages.