ISTHMIAN STEAMSHIP COMPANY,
a corporation, Appellant,

v.

CALIFORNIA SPRAY-CHEMICAL COR-
PORATION, a corporation, Appellee.

No. 16812.

United States Court of Appeals
Ninth Circuit.

May 2, 1961.

McCutchen, Doyle, Brown & Enersen and Russell A. Mackey and Bryant K. Zimmerman, San Francisco, Cal., for appellant.

Hall, Henry, Oliver & McReavy and Lyman Henry and Stephen McReavy, San Francisco, Cal., for appellee.

Before POPE, BARNES and HAMLIN, Circuit Judges.

BARNES, Circuit Judge.

█ This is a suit in admiralty to recover damages for injury to cargo occurring on navigable waters at Alexandria, Egypt. The district court's jurisdiction was based on 28 U.S.C. § 1333. The district court entered an interlocutory decree in favor of libelant and providing for a reference to ascertain the amount of damages. This court has jurisdiction of the appeal taken from the interlocutory decree. 28 U.S.C. § 1292(a) (3).

Libelant-appellee, California Spray-Chemical Corporation, shipped a quantity of an agricultural chemical, known as cotton dust, packed in fiber drums, from Houston, Texas to Alexandria, Egypt in January 1952, on the Steel Architect of appellant Isthmian Steamship Company. On arrival at Alexandria the cargo was discharged into lighters for on-carriage to the quays of Egyptian Petroleum Storage Company. This lighterage was made necessary by Egyptian customs regulations, which required that this commodity be landed only at the "petroleum quays." Since deep draft vessels, such as carrier's, could not come alongside the

petroleum quays, further transportation by lighter was required.

The cargo had been shipped under short bills of lading which incorporated the carrier's long bill containing three "lighterage clauses".[1] These clauses provided that the carrier should be considered to act solely as the consignee's agent to arrange for lightering in Alexandria's Harbor and to effect "delivery" of the cargo by discharging it into lighters.

Accordingly the cargo was put aboard lighters which left the ship and were moored alongside a quay. One of the lighters was so moored that she broke loose from her moorings at night during a storm, pounded against a quay and was rendered unseaworthy. The next day the cotton dust was removed from this lighter to a quay. The lighter was then inspected by an agent of the carrier (appellant Isthmian). After the inspection, the dust was reloaded onto the lighter. The following morning the lighter sank at her moorings and the cotton dust was damaged by seawater.

The district court held that the lighterage clauses were invalid to relieve the carrier of responsibility for negligence in the care of the goods while they were being lightered from the ship to the quays. The court further held that the carrier had failed to rebut the prima facie case of negligence established by libelant. Accordingly the court held the carrier to be liable for all damage occurring before delivery to the quays.

Appellant assigned some thirteen specifications of error which may be reduced to four issues:

1. The validity of the exculpatory lighterage clauses.

2. Assuming that the lighterage clauses are not effective to exculpate appellant for the lighterman's negligence, the validity of the finding that the lighterman was negligent.

3. The implied finding that appellee was the real party in interest, and had standing to sue for the loss.

4. The finding that appellant had been given timely notice of the claim.

1. Validity of the lighterage clauses.

The Harter Act, 27 Stat. 445, 46 U.S. C.A. §§ 190–196, governs a carrier's obligations during the period after the goods have been discharged from the ship's tackle and before they have been delivered. The act invalidates (46 U.S. C.A. § 190) any clause inserted in a bill of lading by a shipowner, relieving the owner from liability for failure to make a "proper delivery," either by agreement with shippers or by delegation to others. The district court held that the "proper delivery" contemplated by the act is the type of delivery recognized as proper at common law; viz. a delivery at a fit and customary wharf, in the absence of port customs and regulations to the contrary (Tan Hi v. United States, D.C.N.D.Cal. 1950, 94 F.Supp. 432). This was the basis for the court's refusal to recognize

---

1. The following language from clauses 14 and 15 of Isthmian's "Regular Long Form of Bill of Lading" (Exhibit D) is pertinent:

"Clause 14. * * *

All responsibility of the carrier in any capacity shall altogether cease and the goods shall be deemed delivered by it under this bill of lading and this contract of carriage be deemed fully performed on actual or constructive delivery of the goods to any such person or on-carrier at port of discharge or elsewhere in case of an earlier substitution, transshipment or on-carriage.

\*     \*     \*     \*     \*

"Clause 15. The carrier or master, in the exercise of its or his discretion, may

at any time, whether or not customary and without notice, lighter the goods or any part thereof, to or from the ship at the risk and expense of the goods. In making arrangements for lighterage or use of craft, the carrier or master shall be considered solely the agent of the shipper and consignee and without any responsibility whatsoever. The carrier shall not be responsible for any loss or damage to the goods while on such lighter or craft or in the custody of the lightermen who shall be considered independent contractors, including, but without limitation, responsibility for the choice of, condition, seaworthiness or manning of such lighter or craft. * * * *"

the validity of the lighterage clauses, since such clauses purported to relieve the owner of liability before "proper delivery," as the court defined it, had been made.

Appellant contends, first that the common law rule relied upon by the district court relates only to the carrier's obligation when *landing* cargo, but does not apply to delivery to a forwarding carrier for *necessary* on-carriage. In support of this proposition appellant apparently relies exclusively upon Galveston Wharf Company v. Galveston, H. & S. A. Ry. Co., 285 U.S. 127, 52 S.Ct. 342, 76 L.Ed. 659. This case does not parallel the instant case, and therefore does not support the proposition asserted. In Galveston it was held that a common carrier was relieved of liability for negligence when it transferred the cargo to another common carrier for transshipment under a through bill of lading. The carrier had deposited the goods upon a fit wharf for transshipment inland. In the instant case, of course, the carrier did not deposit the goods upon a wharf but transferred them to the lighters, not for transshipment inland, but for carriage to the point nearest the port of discharge where the goods could be legally unloaded. Furthermore, and more importantly, the lighterage clauses in question do not purport by their terms to limit the exculpatory provisions to *necessary* on-carriage.[2] Thus, even if the term "proper delivery" permits the inclusion of clauses which authorize lighterage for necessary on-carriage, the clauses here involved do not come within such authorization, nor attempt to do so. Since we think the clauses are in their entirety null and void (see 46 U.S.C.A. § 190), they cannot exculpate appellant from liability even in that small area wherein properly drafted clauses might conceivably be held to so do.

Appellant earnestly asserts that the court erred in striking down the lighterage clauses. It contends that the Harter Act has never been held to deny the shipper and the carrier the right to "agree" that the carrier's liability shall cease upon delivery to a lighter. It claims that the Harter Act was never intended to extend beyond delivery from the ocean vessel.

■ If this were true, there would be, as appellee asserts, no scope for the application of the Harter Act. And the authorities in the field do not support such a result. The Harter Act was indeed partially superseded by the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1300 et seq., but it is still applicable to the period following discharge from the ship and prior to delivery (1 Benedict, Admiralty, 695; Gilmore and Black, Law of Admiralty, p. 126).

■ The Harter Act applies, then, as soon as the cargo has left the ship's tackle; and it provides that from that time until proper delivery has been completed no exculpatory clause can save the shipowner from his liability for failure to care properly for the cargo or to make "proper delivery." Now, if "proper delivery" is completed as soon as the cargo leaves the ship's tackle and is received by the lighterman, the provisions of the Harter Act could never become operative. The shipowner would have, in effect, successfully contracted in a manner prohibited by the Act.

We must concede that two of the cases cited by appellant are direct authority for the proposition that lighterage clauses are valid. John Bonura & Co. v. United Fruit Co., 1926, 162 La. 53, 110 So. 86, did indeed sustain a lighterage clause similar to the one in question here. The court, however, did not consider the applicability of the Harter Act. The case supports appellant's position, but not very convincingly. Federal Insurance Co. v. American Export Lines, Inc., D.C. S.D.N.Y.1953, 113 F.Supp. 540, also directly, but weakly supports appellant's case. There the court held that a clause permitting a carrier to discharge the goods into a craft of its selection allowed

2. See note 1, supra, Clause 15.

the carrier to satisfy its contractual obligations by loading onto a lighter at the port of discharge. Under the peculiar circumstances of that case, however, the court had no occasion to consider the applicability of the Harter Act. Austin Nichols & Co. v. Compania Transatlantica, 1926, 218 App.Div. 660, 219 N.Y.S. 86, affirmed without opinion, 245 N.Y. 624, 157 N.E. 884, does not support either side, although it is claimed by both. The case holds only, as appellee asserts, that "the consignee must bear the ordinary risks incident to lighterage which occur *without* negligence."

The cases cited by appellee are on various grounds distinguishable from the case at bar, but they do reveal a judicial hostility to exculpatory lighterage clauses. Some of these cases are distinguishable *only* because, as appellant asserts, the lighterage was paid by the ocean carrier and the carrier's transportation undertaking was held to include the lighterage. (In the instant case, the bills of lading provided that appellant could act as agent for consignees in arranging for lightering; and accordingly charges for lightering were billed to the consignees.) These facts distinguish Colton v. New York & Cuba Mail S.S. Co., 2 Cir., 1928, 27 F.2d 671, and Insurance Company of North America v. North German Lloyd Co., D.C.D.Md.1900, 106 F. 973, affirmed, 4 Cir., 110 F. 420. And these same facts are clearly the *only* basis for a distinction between the case at bar and Morris v. Lamport & Holt, Limited, D.C.S.D.N.Y.1931, 54 F.2d 925, affirmed per curiam 2 Cir., 57 F.2d 1081. There the carrier's deep draft ship could not reach the shallow waters at the docks and hence lighters were used to load the vessel. A clause in the bill of lading purported to relieve the carrier of liability for loss due to "risk of craft to or from the ship." In dealing with this clause the court said, 54 F.2d at page 926:

"To the extent that the clause purports to relieve the carrier in cases of negligence of the lighterman, it is void under the Harter Act. The transportation of the skins from the shore to the ship by lighterage was a job undertaken by the carrier, after the skins had passed into its custody. The fact that it delegated this part of the carriage to another is of no moment [citing cases]. The truth is that this lighterage was part of the loading of the ship, and section 1 of the Harter Act (46 U.S.C.A. § 190) renders void all provisions relieving carriers from liability for loss caused by negligence in loading cargo [citations]. So the exception is valid only in so far as the loss arose from risk of craft to and from ship and not chargeable to negligence."

Thus this and similar cases, already cited, tend to support appellee's position, although these cases are technically distinguishable in that the carriers therein agreed to purchase as well as to procure the lighterage services which were negligently performed by the lighterman.

The Seaboard, D.C.S.D.N.Y.1902, 119 F. 375, similarly exhibits a judicial antipathy towards lighterage clauses, but it does not directly support appellee's case because the carrier's employees were themselves negligent in carrying out the lighterage operations.

■ We uphold the district court in holding the exculpation clauses invalid.

### 2. The finding that the lighterman was negligent.

Assuming the carrier to be liable for any negligent lighterage, there was, appellant argues, no evidence of negligence in the conduct of the lighterage operations. And the burden of proof is on libelant to prove negligence where cargo damage arises from a cause for which the bill of lading purports to relieve the carrier.

■ The cause of the damage here was the extraordinary wetting by salt water, and the bill of lading contains no specific exception regarding wetting by salt water. Upon this analysis, the burden of proof should be placed on ap-

pellant under the general rule that when damage is shown at the time of delivery the burden of proof passes to the carrier. Gilmore & Black, The Law of Admiralty, p. 162 (appellee's citation).

Appellant asserts, however, that it has proved that the damage occurred during lighterage, and under the bill of lading it is not liable for damage during lighterage. Accordingly, the burden of proof is on appellee to prove negligence, citing The Bellingham, 3 Cir., 1932, 57 F.2d 1015, 1018. The Bellingham does appear to support appellant's contention, but this leads to a strange result, if we assume (as we have and do, but as appellant often forgets to do, in this portion of the case) that the Harter Act (46 U.S.C.A. § 190) invalidates entirely the lighterage clause upon which appellant relies. Acceptance of appellant's position would give legal effect to the invalid clause. If the clause could not be lawfully incorporated into the bill of lading, it should be given no effect at all—not even the effect of shifting the burden of proof.

■■■ Even were we to assume, however, that the burden of proof should properly be placed upon the appellee, appellee asserts that there is ample evidence to support the trial court's conclusion (Conclusions of Law, numbers 5 and 6) that appellant was negligent. Evidence of negligence lies in the inference which may be drawn from the unexplained sinking of the lighter in smooth water. Commercial Molasses Corp. v. New York Tank Barge Corp., 1941, 314 U.S. 104, 111–112, 62 S.Ct. 156, 86 L.Ed. 89. No evidence was presented as to the actual cause of the sinking and the trial judge was certainly entitled to draw an inference of negligence from the undisputed facts. Appellee also asserts that an inference of neglect arises from the fact that the lighter drifted from her moorings the night before the sinking occurred. This proposition is supported by case law. The Louisiana, 1865, 3 Wall. 164, 173, 70 U.S. 164, 173, 18 L.Ed. 85; The Argonaut, 3 Cir., 1953, 204 F.2d 636.

Appellant attempts to distinguish The Argonaut on the ground that the court there made reference to the existence of affirmative evidence of negligence. The reference to such affirmative evidence was not made in support of the inference legitimately drawn from the fact that the ship had drifted from her moorings. The court was only pointing out that appellants there had not successfully rebutted the inference of neglect through their asserted defense of inevitable accident. In the case at bar appellant did not attempt to explain why the lighter drifted from her moorings. The inference stood unrebutted and there was no reason for appellee to put in further affirmative evidence of negligence. Hence, even if the appellee was required to carry the burden of proof, we conclude it presented sufficient evidence to meet that burden and to sustain the trial court's findings.

Appellant contends, however, that the asserted negligence in lighterage (—the negligence in mooring the lighter before the storm and in inadequately inspecting her after it—) was but a "fault of management" for which the carrier is not liable under the Carriage of Goods by Sea Act (COGSA) (46 U.S.C.A. § 1304 (2)), incorporated in appellant's long form bill of lading.

■■■ COGSA saves the carrier harmless only for errors of management with respect to the "ship," and "ship," as used in the Act, has been judicially defined to exclude lighters. The Examiner, D.C.S.D.N.Y.1955, 132 F. Supp. 129, 137–138. Appellant contends that its bill of lading defines ship to include lighters, but it does not present any authority to support the proposition that the scope of COGSA can be enlarged by bill of lading clauses.

Furthermore, appellee asserts that the exemption for errors of management extends only to errors of the ship's master or crew, citing May v. Hamburg-Amerikanische, etc. (The Isis), 1933, 290 U.S. 333, 54 S.Ct. 162, 78 L.Ed. 348. In the instant case the lighter was inspected not

by the ship's master but by the carrier's agent in Alexandria, Egypt. Hence, as in The Isis it was the owner's agent rather than the master of the ship who performed the allegedly negligent acts. Appellant, in attempting to distinguish The Isis, relies solely upon certain language appearing at page 346 of 290 U.S., at page 165 of 54 S.Ct.:

> "Here is a case where the master and crew have surrendered their management and have made appeal to the owner to resume control himself."

Appellant asserts that this exact situation is not duplicated by the facts of the instant case, and hence the authority of The Isis is inapplicable. We do not believe that this single rather rhetorical statement relied upon by appellant sums up and limits the authority of The Isis in the fashion here asserted. It is some if not strong authority.

We cannot hold the finding that the lighterman was negligent is clearly erroneous.

### 3. Is the Appellee the real party in interest?

Appellant contends that appellee has failed to show that it was the owner of the goods or that the cargo owner had given it authority to sue. Appellant seeks to draw an inference that title to the cargo passed to the buyer at the time of shipment, citing Cal.Civ.Code § 1739, Rule 4. But applicability of that rule depends upon the terms of the sales contract (see Cal.Civ.Code § 1739, Rules 4 and 5). That contract is not in evidence. In view of this lack of evidence, it may be assumed, in support of the judgment below, that the shipper (appellee) was the owner of the cargo at the time of suit. It is established that the shipper was the owner at the time of shipment, and that fact has not been altered either by any evidence introduced, or any rule of law.

Appellee also supports this branch of the trial court's decision by the contention that its contract of affreightment with appellant makes it a trustee of an express trust and therefore entitled to sue as the real party in interest. The Ninth Circuit case cited by appellee does indeed support his position. It is not questioned by appellant. See Northern Commercial Co. v. Lindblom, 9 Cir., 1908, 162 F. 250. The portion of the case relied upon by appellee is probably an alternative holding. It has been described as dictum and questioned by the Second Circuit (Aunt Jemima Mills Co. v. Lloyd Royal Belge, 2 Cir., 1929, 34 F.2d 120, 122).

We conclude that appellee had standing to sue for damages occasioned by the damage to the cargo.

### 4. The finding that appellant had been given timely notice of claim

Appellant finally contends that there is no evidence that it received notice of claim as required by the bill of lading, within twenty days after delivery of the cargo. This defense fails for two reasons:

First, the notice requirement of the bill of lading by its own terms "shall not apply where the shipper is the real party in interest and as such has the right to bring suit on such claim." As already indicated, appellee's right to sue as real party in interest is established on either or both of two grounds. If that holding be correct, no notice before suit was necessary.

Secondly, there is evidence to support the finding (Finding 11) that proper notice had been given. In evidence there is a letter from Isthmian dated March 1, 1952. This letter admits receipt of a letter dated February 25, 1952, making claim for the damage to the cargo. The loss took place February 22, 1952. Although the letter of February 25, 1952, is itself not in evidence, it apparently originated with Abaza & Company (whose interest in the transaction is not shown). But such letter fully fills the notice requirements as established by clause twenty-four of appellant's long form bill of lading. It

was in writing and expressed a claim and was made within ten days after discharge of the goods.

Finding no error, the judgment below is affirmed.

POPE, Circuit Judge.

I concur.

The court's opinion, as I understand it, in invalidating the clause of the bill of lading relating to lighterage holds that the carrier remains responsible for the safe arrival of the goods under the general law of maritime carriage. That law, to start with, provided that all the shipper had to do to make his case was to prove receipt of goods in good order and non-delivery, or delivery in bad order. In this connection the opinion states: "The Act invalidates * * * any clause inserted in a bill of lading by a ship owner, relieving the owner from liability for failure to make a 'proper delivery' either by agreement with shippers or by delegation to others." It would follow that the opinion proceeds upon the theory that the duty of safe and proper delivery is a nondelegable duty. If that be so, then in the absence of proof by the carrier that the circumstances were such that this absolute duty did not apply, such for instance as perils of the sea, act of God, act of war or public enemies, etc., the carrier is liable if safe delivery be not made. If the case be shown to be under one of the recognized exceptions mentioned, even then he becomes liable if he has been negligent.

The obligations of this carrier were governed not merely by the Harter Act but by the provisions of the Carriage of Goods by Sea Act as well. The bill of lading expressly recited: "This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936, which shall be deemed to be incorporated herein. * * * The provisions stated in said Act * * * shall govern before the goods are loaded on and after they are discharged from the ship and throughout the entire time the goods are in the custody of the carrier."

The only provision of that Act which might conceivably operate to relieve the carrier is § 4(2) (q) which provides: "Neither the carrier nor the ship shall be responsible for loss or damage arising or resulting from * * * any other cause arising without the actual fault and privity of the carrier and without the fault or neglect of the agents or servants of the carrier, but the burden of proof shall be on the person claiming the benefit of this exception to show that neither the actual fault or privity of the carrier nor the fault or neglect of the agents or servants of the carrier contributed to the loss or damage." It is possible that the argument might be made that since the lighterage company which owned and handled the lighter was an independent contractor, the loss which occurred while the goods were in its hands could be deemed due to a cause "arising without the actual fault and privity of the carrier and without the fault or neglect of the agents or servants of the carrier" within the meaning of the clause just quoted. I think it unnecessary to resolve that question. If the paragraph just quoted has no application here, then since the cause of the loss was neither an act of God nor a peril of the sea, nor due to a fault in the navigation and management of the ship, or any other excepted cause, the absolute nondelegable duty to make safe delivery renders the carrier liable here without regard to negligence; and negligence is immaterial. On the other hand, if the carrier may find an exception from his absolute responsibility within the provisions of § 4(2) (q), supra, he cannot claim it in this case for a condition precedent to his utilization of that provision is that he must prove want of negligence and he has the burden thereof as that section provides.

In discussing the question of proof of negligence, the opinion states that "evidence of negligence lies in the inference which may be drawn from the unex-

plained sinking of the lighter in smooth water." This is the same sort of inference which may be drawn in ordinary cases where the rule of res ipsa loquitur is applied. If it were necessary here to prove that the carrier itself was guilty of negligence I might have some difficulty in drawing an inference of that kind as to negligence on the part of the carrier in view of the fact that the lighter was not at the time of sinking in the possession of the carrier or its agents; but for the reasons I have stated above that too is a problem which I think need not be met here.

In short, what I am saying here is that either § 4(2) (q) has application here to furnish what Gilmore and Black call a "catch-all exception" or it does not. If it does not, then the non-delegable duty of respondent carrier makes it liable. If it does apply that section's requirement of proof of want of negligence has not been complied with.