**LOUIS FURTH, INC., Plaintiff,**

v.

**S.S. SRBIJA, her engines, etc. and Jugoslavenska Linijska Plovidba, Defendant and Third-Party Plaintiff,**

v.

**INTERNATIONAL TERMINAL OPERATING CO., Inc., Third-Party Defendant.**

**No. 65 Ad. 647.**

United States District Court, S. D. New York.

Sept. 4, 1970.

Bigham, Englar, Jones & Houston, by Michael F. Whalen, New York City, for plaintiff.

Cichanowicz & Callan, by Michael J. Ryan, New York City, for defendant and third-party plaintiff.

Hill, Betts, Yamaoka, Freehill & Longcope, by Robert H. Peterson, New York City, for third-party defendant.

CANNELLA, District Judge.

The plaintiff importer sues the defendant for damage done to a cargo of Dalmatian sage leaves. The defendant ocean carrier filed in turn a third-party complaint against its stevedore and terminal operator, seeking indemnity, in event of recovery against the ship.

On May 21, 1961, bales of Dalmatian sage leaves were loaded at Rijeka, Yugoslavia, aboard the S. S. Srbija, which is owned by the defendant Jugoslavenska Linijska Plovidba. "Clean" bills of lading providing for freight prepaid to the port of New York were issued at that time. Thereafter, the Srbija arrived at Pier 1, Erie Basin, Brooklyn, New York and discharged in good order the bales.

These bales covered by bill of lading No. 5 [1] were then stowed by the third-party defendant International Terminal Operating Co., Inc. [hereinafter "ITO"] in a covered headhouse (shed) located on the pier. Subsequently, on June 13, 1961, five of these bales were delivered to the plaintiff from the headhouse and found to be in good condition.

On June 14, 1961, plaintiff arranged for weighers from West Weighing Corporation to weigh the remaining bales. The bales were then to be trucked to a party to be designated by the plaintiff. Finding that the quantity of cargo within the headhouse would prevent weighing the bales properly *on that date* and, in addition, would not provide ready access to the trucks, ITO agreed with the weighers [2] to move the bales from the headhouse to the farm area (an uncovered area located just outside). As the weighing progressed, a rain shower occurred and the bales were wetted and thereby damaged even though ITO utilized all available Hi-los (fork lift trucks) to move the bales back under cover.

The damaged bales were subsequently dried, albeit with some loss. The parties have stipulated that the damages without interest are $1,895.68.

The forecast of the United States Weather Bureau was available to all parties. This forecast for New York City at 2300 hours on June 13, 1961 was "mostly fair, very warm and humid Wednesday [June 14] with scattered showers and thunderstorms toward evening. * * * " [3] This was changed slightly at 5 a. m. on June 14 to: "Continued very warm and humid again today with the high reaching the 90s but with increasing cloudiness and chance of

---

1. See plaintiff's Exhibit 1.

2. The weighers were given somewhat of a Hobson's choice: Weigh on that day in the farm area or wait until the headhouse emptied out.

3. See Plaintiff's Exhibit 7.

a shower or thunderstorm later in the day or evening;" and at 11 a. m. to: "Continued hot and humid this afternoon, high near 90. Increasing cloudiness with chance of a shower or thunderstorm later in the afternoon or evening."[4] The court finds, however, that the parties did no more than consult such forecasts once in the early part of the day.

█ In seeking redress, the plaintiff has invoked the admiralty jurisdiction of this Court, 28 U.S.C. § 1333(1). With regard to the indemnity action by the defendant, the court also finds that it has admiralty jurisdiction. See Christman v. Maristella Compania Naviera, 293 F.Supp. 442 (S.D.N.Y.1968); Marubeni-Iida (American), Inc. v. Nippon Yusen Kaisha, 207 F.Supp. 418 (S. D.N.Y.1962).

█ The court finds that there was a "proper delivery" within the meaning of the Harter Act.[5] Once there is such a proper delivery, neither Harter nor the Carriage of Goods by Sea Act[6] is applicable, and the carrier's duties are those of a bailee or warehouseman as set forth in David Crystal, Inc. v. Cunard S. S. Co., 223 F.Supp. 273 (S.D.N.Y.1963), aff'd, 339 F.2d 295 (2d Cir. 1964), cert. denied, John T. Clark and Son v. Cunard S. S. Co., 380 U.S. 976, 85 S.Ct. 1339, 14 L.Ed.2d 271 (1965).

█ Although in *Crystal,* Levet, J., could find no authority in admiralty as to the standard of care a carrier must exercise while he is such a bailee and a misdelivery occurs, he adopted, with the Second Circuit's approval, the Restatement of Torts[7] which follows the common law rule. In addition, he stated "that the duty of a carrier, as warehouseman, is to exercise ordinary care for the protection of the goods." 223 F.Supp. at 283. Therefore, it is necessary for the plaintiff here to show some type of negligence on the part of the carrier or on the part of anyone the carrier has entrusted the cargo to in order to hold the carrier liable. See N.Y.U.C. C. § 7–204; Union Marine & General Ins. Co. v. American Export Lines, Inc., 274 F.Supp. 123 (S.D.N.Y.1966); David Crystal, Inc. v. Cunard S. S. Co., supra. See also The Italia, 187 F. 113 (2d Cir. 1911); Isthmian S. S. Co. v. California Spray-Chemical Corp., 290 F.2d 486 (9th Cir. 1961), aff'd on rehearing, 300 F.2d 41 (9th Cir. 1962).

█ The court finds that the carrier itself was not negligent and that all the sage was discharged in good condition to a wharf reasonably fit for the cargo, it being thereafter stored under cover in the headhouse. In addition, the court finds that the third-party defendant, ITO, to which the cargo had been entrusted, was not negligent. At the time of the initial movement of the bales to the farm area for weighing, rain was not falling nor were there overcast skies, and the weather forecast of a "chance of showers" or "scattered showers" was not such as to make the move negligent.[8] Furthermore, ITO prudently attempted to move the bales under cover when the sudden shower occurred. The court finds therefore that since neither the defendant nor the third-party defendant was negligent, there can be no recovery by the plaintiff for the damage done to its bales of sage. There being

---

4. Id.

5. 46 U.S.C. § 190. The Harter Act governs a carrier's obligation after discharge from the ship's tackle until "proper delivery"—delivery at a fit and customary wharf. See 46 U.S.C. § 190; Caterpillar Overseas, S.A. v. S.S. Expeditor, 318 F.2d 720 (2d Cir. 1963); Isthmian S.S. Co. v. California Spray-Chemical Corp., 290 F.2d 486 (9th Cir. 1961), aff'd on rehearing, 300 F.2d 41 (9th Cir. 1962).

6. 46 U.S.C. § 1300 et seq. See 46 U.S.C. § 1301(e).

7. See Restatement of Torts § 234 (1934). There is, however, no misdelivery involved herein but only damage from a known cause—the sudden rain shower.

8. This type of forecast is not unusual for New York City during June.

no liability on the part of the defendant, there is likewise no liability for indemnity on the part of the third-party defendant.

All motions upon which decision was reserved at trial are denied. The above constitutes the court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

Accordingly, the summons and complaint and the third-party summons and complaint are dismissed.

So ordered.