**CATERPILLAR OVERSEAS, S.A.,**
Libellant-Appellant,

v.

**S.S. EXPEDITOR and American Export Lines, Inc., Respondent-Appellee.**

No. 245, Docket 27956.

United States Court of Appeals
Second Circuit.

Argued March 6, 1963.

Decided June 20, 1963.

---

Bigham, Englar, Jones & Houston, New York City (F. Herbert Prem, New York City, of counsel), for libellant-appellant.

Haight, Gardner, Poor & Havens, New York City (M. E. DeOrchis, Clifford J. Brenner, New York City, of counsel), for respondent-appellee.

Before CLARK and WATERMAN, Circuit Judges, and ANDERSON, District Judge.

WATERMAN, Circuit Judge.

Caterpillar Overseas, S.A. appeals from a final decree in admiralty denying recovery in its action against American Export Lines, Inc., for damage to cargo. The decree was entered in the United States District Court for the Southern District of New York, Metzner, J., where jurisdiction was based upon 28 U.S.C. § 1333.

On December 30, 1959, Caterpillar shipped two tractors from New York to Tripoli, Libya, on appellee's vessel, the S.S. Expeditor. Because the vessel's draft was too deep for a berth at the port of Tripoli, the ship anchored, upon arrival, in the Tripoli harbor. There the tractors were transferred from the S.S. Expeditor, by use of her tackle operated by stevedores, to the deck of a steel lighter which was secured by lines to the ship. The lighter had been hired and the stevedores employed by W. E. Rippon & Sons, appellee's agent in Tripoli for many years. The lighterage was billed to the consignee of the cargo, but, as permitted by the bill of lading, the consignee was neither consulted by the ship's agent concerning the use of the lighter nor notified of the arrival of the ship.

After the tractors had been placed on the deck of the lighter and chocked, and while the stevedores were lifting a sling load of additional cargo from the ship's hold, the lighter listed toward the ship

and the two tractors were cast overboard. They were subsequently raised and deposited on the quay in a damaged condition.

At the trial below, American Export Lines sought to escape liability by setting up three exculpatory clauses in the bill of lading,[1] the net effect of which was to excuse the carrier from any liability for loss or damage to the goods when they were not in its actual custody, or when they had been "discharged" onto a wharf or lighter. Moreover, American Export denied that it was negligent in the handling of appellant's cargo. Caterpillar sought to establish defendant's negligence by offering proof that the lighter was unseaworthy and that it was given only a perfunctory examination by American Export's agents before use. Caterpillar also maintained that the exculpatory clauses in the bill of lading, relied upon by appellee, were void under Section 1 of the Harter Act, 46 U.S.C. § 190 et seq., or Section 3(a) of the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. § 1300 et seq. The district court ruled that the Harter Act and COGSA were inapplicable to the facts of this case, gave effect to the exculpatory clauses of the bill of lading, and held that American Export was not liable for the damage to appellant's cargo. We reverse and remand with instructions that a decree be entered in favor of libelant, Caterpillar Overseas, Inc.

■ Under the general law of maritime carriage, public carriers of goods by sea were absolutely responsible for their safe arrival, subject to certain common law exceptions not here relevant. The Propellor Niagara v. Cordes, 21 How. 7, 16 L.Ed. 41 (1858); Carver, Carriage of Goods by Sea 3–20 (9th ed. 1952). During the Nineteenth Century shipowners sought to limit their strin-

gent liabilities for loss or damage to cargo by inserting exculpatory clauses in their bills of lading. Some of these clauses exempted the carrier from liability for loss due to particularly-described perils and causes. Others went so far as to relieve the carrier from liability for the results of his own negligence. Because of the superior bargaining position of the carriers, shippers of goods were largely powerless to avoid the proliferation of these exceptions to liability, and bills of lading became contracts of adhesion forced upon shippers by carriers. See generally Gilmore & Black, The Law of Admiralty 119 et seq. (1957); Note, 27 Texas L.Rev. 525 (1949).

■ In 1893 Congress sought to eliminate these abuses by enacting the Harter Act, 46 U.S.C. § 190 et seq. Section 1 of the Act provides that:

"It shall not be lawful for the * * * owner of any vessel transporting * * * property from or between ports of the United States and foreign ports to insert in any bill of lading * * * any clause, * * * whereby it * * * shall be relieved from liability for loss or damage arising from negligence, fault, or failure in proper loading, stowage, custody, care, or proper delivery of * * * property committed to its * * * charge. Any and all words or clauses of such import inserted in bills of lading * * * shall be null and void and of no effect."

Section 2 declares of no effect any attempt to lessen, weaken or avoid the obligations of the owner to exercise due diligence properly to make the vessel seaworthy. In 1936, the Harter Act was supplanted, in large part, by the Carriage of Goods by Sea Act, 46 U.S.C. §

1. Clause 1: "The Carrier shall not be liable in any capacity whatsoever for * * * loss of or damages to the goods occurring while the goods are not in the actual custody of the Carrier."

Clause 4: "When the goods are discharged from the ship, as herein provided, they shall be at their own risk and

expense; such discharge shall constitute complete delivery and performance under this contract and the Carrier shall be freed from any further responsibility."

Clause 12: "All lighterage and use of craft in discharging shall be at the risk and expense of the goods."

1300 et seq., which reaffirmed the carrier's liability for loss or damage to cargo caused by its own negligence. COGSA's coverage, however, extends only to the period, in foreign commerce, "from the time when the goods are loaded on to the time when they are discharged from the ship." 46 U.S.C. § 1301(e). Harter remained applicable, therefore, to the period between the discharge of cargo from the vessel and its proper delivery. Gilmore & Black, supra at 126.

 Under general maritime law, a port to port contract of carriage ordinarily requires the carrier to deliver goods into the possession of the consignee, or at least to place the goods upon a fit wharf at the port of destination. See Tan Hi v. United States, 94 F.Supp. 432 (N.D.Cal.1950); The Titania, 131 F. 229, 230 (2 Cir. 1904); The Mary Washington, 16 Fed.Cas. 1006, No. 9,229. This duty of proper delivery is not, of course, conterminous with the duty to transport, Isthmian Steamship Co. v. California Spray-Chemical Corp., 300 F.2d 41, 46 (9 Cir. 1960); nor is it affected by the allocation of costs between carrier and shipper. Ibid. Thus the carrier remains liable for negligence even if, as here, the goods are required to be off-loaded in the harbor and carried to shore by means of a lighter, and even if it is agreed that the shipper shall bear the costs of lighterage. Under Section 1 of the Harter Act, therefore, Clauses 1 and 12 of the present bill of lading, taken by themselves, would appear to be void insofar as they attempt to shift the risk of lighterage to the goods.

Appellee relies primarily, however, upon Clause 4 of its bill of lading which purports to make *delivery* of the goods, and thus the termination of the carrier's statutory and contractual liability, concurrent with *discharge of the cargo* from the vessel, wherever that discharge may take place:

"4. In any situation whatsoever and wheresoever occurring * * * which in the judgment of the Carrier or the Master is likely to give rise to * * * delay or difficulty in arriving, discharging at or leaving the port of discharge or the usual or agreed place of discharge in such port, * * * the Carrier or the Master * * * may discharge the goods into depot, lazaretto, craft, or other place; or * * * may discharge and forward the goods by any means * * *. The Carrier or the Master is not required to give notice of discharge of the goods or the forwarding thereof as herein provided. When the goods are discharged from the ship, as herein provided, they shall be at their own risk and expense; such discharge shall constitute complete delivery and performance under this contract and the Carrier shall be freed from any further responsibility. * * *" (Emphasis supplied.)

The purpose of the clause is apparent. By equating "discharge" with "delivery" the carrier seeks to eliminate the operation of the Harter Act upon foreign trade. By fiat it seeks to secure immunity from liability which no combination of mere exculpatory clauses could achieve. All of this it purports to accomplish in the name of a freedom of contract which Congress, in enacting Harter and COGSA, found to be largely fictional in view of the disparate positions of the parties.

The Harter Act does not define "proper delivery," however. It remains to be determined, therefore, whether such a delivery may be accomplished by the mere discharge of goods from the vessel, wherever that discharge may take place.

In Isthmian Steamship Co. v. California Spray-Chemical Corp., 290 F.2d 486 (9 Cir. 1961), on reargument, 300 F.2d 41 (9 Cir. 1962), cargo was discharged from the carrier's vessel, in the harbor at Alexandria, Egypt, to a lighter for oncarriage to the dock. In an action for damage to the cargo while it was on the lighter the carrier's defense was based upon two bill of lading clauses which authorized the carrier to effect

"delivery" of the cargo by discharging it onto lighters "at the risk and expense of the goods * * * without any responsibility whatsoever." Holding the clauses void under Section 1 of the Harter Act, the Ninth Circuit ruled that "proper delivery" under the Act, in the absence of port customs and regulations to the contrary, constitutes delivery at a fit and customary wharf. See Morris v. Lamport & Holt, Ltd., 54 F.2d 925, 926 (S.D.N.Y.1931); aff'd per curiam, 57 F.2d 1081 (2 Cir. 1932); North American Smelting Co. v. Moller S.S. Co., 204 F.2d 384, 386, 388 (3 Cir. 1953); Remington Rand, Inc. v. American Export Lines, Inc., 132 F.Supp. 129 (S.D. N.Y.1955).

■ On the facts of this case we are not required to determine whether proper delivery under a port to port contract of maritime carriage may only be made by discharge onto a fit wharf. On the contrary, we should suppose, for example, that in a case where the consignee owns his own lighter and has his own stevedores, the Harter Act would not prohibit a properly drafted agreement providing for delivery of goods by discharge onto the consignee's lighters. Here, however, the lighter was not selected by the shipper nor by the consignee of the goods, but by the carrier. Under these circumstances, proper delivery requires, at the very least, the selection of, and the discharge of the goods onto, a fit and safe lighter. See The Tangier, 23 How. 28, 16 L.Ed. 412 (U.S.1859). This obligation, for the negligent performance of which the carrier bears full responsibility, might be found as an implied term of the bill of lading before us; but insofar as the lighterage clauses have

been construed by both the parties and the Court below so as to relieve the carrier of this duty, we are constrained to hold the clauses null and void under Section 1 of the Harter Act.[2]

■ At the trial below appellant established a prima facie case for recovery by showing that its goods were received in damaged condition at the port of destination. Schnell v. The Vallescura, 293 U.S. 296, 304, 55 S.Ct. 194, 79 L.Ed. 373 (1934); Schroeder Bros., Inc. v. The Saturnia, 226 F.2d 147, 149 (2 Cir. 1955); Gilmore & Black, The Law of Admiralty, 162–63 (1957). Appellant further established that the damage was not due to the operation of the lighter during oncarriage from the vessel to the dock, for the Court below found that appellant's tractors were cast overboard while goods were still being off-loaded onto the lighter and while the lighter was secured by lines to the ship.

■ Upon this showing, American Export Lines had the burden of proving that the loss was due to an excepted cause under its bill of lading. Because of the invalidity of Clauses 1, 4 and 12, however, American Export could only rely upon Section 4(2) (q) of COGSA (incorporated into the present bill of lading by agreement of the parties) which provides:

"4(2) Neither the carrier nor the ship shall be responsible for loss or damage arising or resulting from—

\* \* \* \* \* \*

"Any other cause arising without the actual fault and privity of the carrier and without the fault or neglect of the agents or servants of the carrier, but the burden of proof shall

---

2. Caterpillar argues, as an alternative ground for reversing the judgment below, that its tractors were not "discharged" at the time they were cast overboard, because the loading of the lighter was not fully completed before the accident occurred. See Remington Rand, Inc. v. American Export Lines, Inc., 132 F.Supp. 129, 137 (S.D.N.Y.1955); Hoegh Lines v. Green Truck Sales, Inc., 298 F.2d 240 (9 Cir.1962), cert. denied, 371 U.S. 817,

83 S.Ct. 31, 9 L.Ed.2d 58. We find it unnecessary, however, to rule on this issue. If injury to the goods occurred before their discharge from the vessel, Section 3(2) of COGSA would invalidate any agreement purporting to shield the carrier from liability for negligence in the handling of the goods. If the goods were discharged but not delivered at the time of the injury, Section 1 of the Harter Act would control.

be on the person claiming the benefit of this exception to show that neither the actual fault or privity of the carrier nor the fault or neglect of the agents or servants of the carrier contributed to the loss or damage."

We hold that appellee failed below to sustain this burden of proof. The trial court found that the lighter careened in fair weather and a calm sea, and, as appellee failed to advance any explanation of this occurrence, a presumption of unseaworthiness arose which appellee failed to rebut. Commercial Molasses Corp. v. New York Tank Barge Corp., 314 U.S. 104, 111–112, 62 S.Ct. 156, 86 L.Ed. 89 (1941); The Jungshoved, 290 F. 733 (2 Cir. 1923), cert. denied, 263 U.S. 707, 44 S.Ct. 35, 68 L.Ed. 517. This presumption gained support from Caterpillar's affirmative proofs tending to show that the lighter had a holed side plate and warped tank top lids and no gaskets, which permitted water to enter the lighter's tanks and thereby to render it unstable.

Although a presumption of actual unseaworthiness did not preclude American Export Lines from proving that it exercised due care in *attempting* to select a seaworthy lighter, little such evidence was forthcoming. Appellee's agent, a stevedore foreman, allegedly took a 5 or 10 minute walk over the deck of the lighter, prior to the tractors' off-loading, but no attempt was made to ascertain whether water was in the lighter's tanks and no inspection was made of the lighter's sides. Upon such a factual showing we hold that a finding of due care in the selection of the lighter could not be sustained.[3]

Reversed and remanded.

3. Although the court below found that the loss was not caused by respondent's negligence, this finding was apparently premised upon the belief that Clauses 1, 4 and 12, even if ineffective to shield the carrier from liability for negligence, shifted the burden of establishing American Export's negligence to appellant. Properly-drafted lighterage clauses might well have achieved this result; the exculpatory provisions of the present bill of lading, however, were rendered void under the Harter Act even for purposes of forcing the shipper to prove negligence. Isthmian Steamship Co. v. California Spray-Chemical Corp., 290 F.2d at 490–491.