**SKLUT HIDE AND FURS, a Delaware corporation, Plaintiff,**

**v.**

**PRUDENTIAL LINES, INC., a Delaware corporation, Defendant.**

Civ. A. No. 80–552.

United States District Court,
D. Delaware.

April 2, 1982.

Kester I. H. Crosse, Wilmington, Del., for plaintiff.

Thomas Herlihy, III, of Herlihy, Herlihy & Harker, Wilmington, Del., for defendant; Douglas H. Riblet, of Rawle & Henderson, Philadelphia, Pa., of counsel.

STEEL, Senior District Judge.

Plaintiff, Sklut Hide and Furs ("Sklut") has brought this action in admiralty for the loss of cargo carried in ocean transportation from the United States to Italy. Jurisdiction is based upon 28 U.S.C. § 1333. Now before the Court is the motion of the defendant, Prudential Lines, Inc. ("Prudential") for summary judgment pursuant to Fed.R.Civ.P. 56(b).

On March 27, 1980, plaintiff and defendant entered into a contract of carriage, Bill of Lading No. 1001, for the transportation of a container of 400 wet salted cattle hides aboard the SS Lash Atlantico, an oceangoing vessel owned by Prudential. The bill of lading stated that the "port or place of loading" was New York, the "port or place of discharge" was Leghorn, and bore the following legend:

"CLEAN ON BOARD—FREIGHT PREPAID BEYOND CHARGES TO SAN CROCE SULL ARNO PREPAID HOUSE TO HOUSE CONTAINER SERVICE"

Plaintiff paid defendant a total of $1,538.57, which included prepaid freight for house to house container service between New York and San Croce Sull Arno.

In due course the container was loaded on the SS Lash Atlantico and was later discharged at Genoa, Italy.[1] Why the dis-

---

1. The affidavit of Joseph C. Benedetti, Secretary of Prudential, relates that the container was discharged in Genoa on May 28, 1980. In

charge was in Genoa and not Leghorn as required by the bill of lading is not explained. After its arrival in Genoa the container was delivered to an inland carrier for transportation to Leghorn where it was to be forwarded to San Croce Sull Arno. The hides never reached their intended destination because on or about June 2, 1980, the container and its contents were stolen from the inland carrier after their arrival in Leghorn. Aldo Spinnelli was the inland trucker engaged by the defendant to complete the overland portion of the contract of carriage. Plaintiff did not employ him or designate him as his agent or servant in connection with the shipment.

The defendant bases its motion for summary judgment on two provisions in the contract of carriage set forth in the bill of lading. Prudential points to Clause 10 in which, it contends, Sklut agreed that Prudential would not be responsible for any loss or damage to Sklut's cargo which occurred while the cargo was not in the actual physical custody, control or possession of Prudential. Defendant argues that this provision is enforceable under the United States Carriage of Goods by Sea Act, 46 U.S.C. § 1300 *et seq.* In addition, Prudential argues that Sklut did not provide notice of the loss or claim in writing within three days of its occurrence as required by Clause 19 of the bill of lading.

Clause 10 of the bill of lading provides as follows:

10. TRANSSHIPMENT:

Whenever the carrier or the Master may deem it advisable or in any case where the goods are consigned to a point where the vessel is not expected to discharge, the carrier or Master may, without notice, forward the whole or any part of the goods, before or after loading at the original or any intermediate port of shipment, or at any other place or places, even though outside the scope of the voyage or the route to or beyond the port of discharge or the destination of the goods,

by any vessel, vessels or other means of transportation by water, land or air, or by any such means, whether operated by the carrier or by others and whether departing or arriving, or scheduled to depart or arrive before or after the ship expected to be used for transportation of the goods. The carrier, in making any arrangements for transshipment by any means of transportation not operated by it, shall be deemed the forwarding agent of the shipper and consignee without any responsibility whatsoever. The oncarriage shall be subject to the terms of the oncarrier's current form of bill of lading or other contract, whether issued or not, even though such terms may include a lower valuation of the goods or lower limitation of liability or otherwise be less favorable to the shipper or consignee than the terms of this bill of lading. Pending or during transshipment, the goods may be stored ashore or afloat at their risk and expense.

When this bill of lading is issued as a through bill of lading, the cargo described shall be considered to be 'in transit' from the place of original departure or a point where the transportation begins to the place of final destination, and all arrangements made for land, water or air transportation of said goods before, or after, the described ocean transportation carried out by Prudential Lines, Inc., have been, or will be, made solely as agents for the shipper/consignee and subject to all of the terms and conditions of the originating, connecting or final carrier's bill of lading or other transit document without any responsibility for performance thereunder being assumed by Prudential Lines, Inc. and without enlargement or extension of the responsibility or liability on its part to the goods as defined in this bill of lading. It is also expressly understood and agreed that Prudential Lines, Inc. will not be responsible with respect to said goods while they are not in its actual physical custody, control or possession.

contrast, the affidavit of Morton Sklut, President of Sklut Hide, affirms that he was advised by his agent in Italy on May 25, 1980, that the

Lash Atlantico actually had arrived in Italy on or about April 30, 1980. This factual disparity is immaterial to the Court's decision.

Section 7 of COGSA, 46 U.S.C.A. § 1307, provides:

§ 1307. *Agreement as to liability prior to loading or after discharge*

Nothing contained in this chapter shall prevent a carrier or a shipper from entering into any agreement, stipulation, condition, reservation, or exemption as to the responsibility and liability of the carrier or the ship for the loss or damage to or in connection with the custody and care and handling of goods prior to the loading on and subsequent to the discharge from the ship on which the goods are carried by sea.

Apr. 16, 1936, c. 229, § 7, 49 Stat. 1212.

■ Standing alone Section 7 would authorize the exculpatory provisions in Clause 10 of the bill of lading. Section 7 must be read, however, in the light of Section 12 of COGSA, 46 U.S.C.A. § 1311, which provides:

§ 1311. *Liabilities before loading and after discharge; effect on other laws*

Nothing in this chapter shall be construed as superseding any part of sections 190 to 196 of this title, or of any other law which would be applicable in the absence of this chapter, insofar as they relate to the duties, responsibilities, and liabilities of the ship or carrier prior to the time when the goods are loaded on or after the time they are discharged from the ship.

Apr. 16, 1936, c. 229, § 12, 49 Stat. 1212.

This latter provision makes clear that the terms of Section 7 must yield to the extent it is inconsistent with "any other law relating to the duties, responsibilities and liabilities of the ship after the time when they are discharged from the ship."

COGSA was enacted in 1936. Section 1 of the Harter Act, 46 U.S.C. § 190, has been the law since it was enacted in 1893. It makes null and void and of no effect all words or clauses in a bill of lading which purport to relieve an owner of any vessel transporting property between ports of the United States and foreign ports from liability for loss or damages for failing to make proper delivery of property committed to its charge. 46 U.S.C.A. § 190 reads:

§ 190. *Stipulations relieving from liability for negligence*

It shall not be lawful for the manager, agent, master, or owner of any vessel transporting merchandise or property from or between ports of the United States and foreign ports to insert in any bill of lading or shipping document any clause, covenant, or agreement whereby it, he, or they shall be relieved from liability for loss or damage arising from negligence, fault, or failure in proper loading, stowage, custody, care, or proper delivery of any and all lawful merchandise or property committed to its or their charge. Any and all words or clauses of such import inserted in bills of lading or shipping receipts shall be null and void and of no effect. Feb. 13, 1893, c. 105, § 1, 27 Stat. 445.

Accordingly, COGSA is without application in this case since it is inconsistent with Section 1 of the Harter Act.

■ Two decisions, *Isthmian Steamship Co. v. California Spray-Chemical Corp.*, 290 F.2d 486 (1961), *on reargument*, 300 F.2d 41 (9th Cir. 1962); and *Caterpillar Overseas, S. A. v. S. S. Expeditor*, 318 F.2d 720 (2d Cir. 1963), are especially relevant to an interpretation of the Harter Act. Although they arise from facts dissimilar to those at bar, they establish principles which make Clause 10 null and void and of no effect insofar as it purports to relieve the defendant from responsibility for the loss to plaintiff's cargo after it was discharged at Genoa and was in transit via Leghorn to San Croce Sull Arno.

In *Isthmian Steamship Co. v. California Spray-Chemical Corp., supra*, 290 F.2d 486, libelant had shipped a quantity of agricultural chemicals, known as cotton dust, from Houston, Texas to Alexandria, Egypt on the Steel Architect owned by the respondent. On arrival at Alexandria the cargo was discharged into lighters for on-carriage to the quays of the Egyptian Petroleum Storage Company. The lighterage was made necessary by Egyptian customs regu-

lations which required that this commodity be landed only at the "petroleum quays." Because of the depth of its draft, the Steel Architect could not come along side the petroleum quays and further transportation was required. The cargo was put aboard the lighters which left the ship and were moored along side the quays. Before delivery of the cargo the lighter sank at her moorings and the cotton dust was damaged by sea water. Libelant sued in admiralty for damages. The cargo had been shipped under short bills of lading which incorporated three "lighterage clauses." These were described at 290 F.2d at 488:

> "These clauses provided that the *carrier should be considered to act solely as the consignee's agent to arrange for lightering in Alexandria's Harbor and to effect 'delivery' of the cargo by discharging it into lighters.*" (emphasis added)[2]

The District Court held that the lighterage clauses were invalid to relieve the carrier of responsibility for negligence in the care of the goods while they were being lightered from the ship to the quays. Upon reargument the judgment of the lower court was affirmed, as modified, in the original opinion.[3] *Isthmian Steamship Co. v. California Spray-Chem. Corp., supra*, 300 F.2d 41. The Court said that its earlier opinion rested essentially upon the reasoning embodied in the trial court's decision and that both decisions had held that a carrier could not by contract avoid liability for negligent injury to cargo when such injury occurs before the cargo is delivered to a fit and proper wharf. The Court said:

> It would seem, then, that any attempt by the carrier to avoid liability for losses arising before delivery must fail. Once proper delivery has been made, however, the carrier's liability, as far as the Harter Act is concerned, is at an end. It is, therefore essential to determine *what* a proper delivery is, and *when* such delivery is completed. The court below and this court on appeal held that a proper delivery as defined by general maritime law,

occurred when the cargo was deposited upon a fit and proper wharf.

300 F.2d at 43 (emphasis in original). And further:

> In the instant case, the negligence which caused the loss occurred *before* such proper delivery was accomplished. If, then, the bill of lading clause involved here is sufficient to save appellant harmless, the Act will have been circumvented.

*Id.* at 46 (emphasis in original). And:

> The court's opinion did not hold, as appellant seems to believe, that a carrier cannot contract for authority to arrange for lightering of cargo at the shipper's expense; it held only that a carrier cannot relieve itself of liability occurring during such lightering or at any time before proper delivery.

*Id.* at 47.

In *Caterpillar Overseas, S. A. v. S.S. Expeditor*, 318 F.2d 720, *supra*, the plaintiff shipped two tractors from New York to Tripoli, Libya, on the defendant's vessel, the Expeditor. Because the vessel's draft was too deep for a berth at the port of Tripoli, the ship anchored upon arrival in the Tripoli harbor. There the tractors were transferred from the Expeditor to the deck of a steel lighter which was secured by lines to the ship. After the tractors had been placed on the deck of the lighter and chocked, the lighter listed toward the ship and the two tractors were cast overboard. They were subsequently raised and deposited on the quay in a damaged condition.

The lighter had been hired and the stevedores employed by W. E. Rippon & Sons, the agent for many years of the defendant. The lighterage was billed to the consignee of the cargo, but, as permitted by the bill of lading, the consignee was neither consulted by the ship's agent concerning the use of the lighter nor notified of the arrival of the ship.

Plaintiff sued the American Export Lines for damages to the cargo. The District Court denied recovery. The decision was

---

**2.** This is a summarization of the actual clauses set out in 290 F.2d at 488 n.1.

**3.** The modification is inconsequential and it is unnecessary to discuss it.

reversed and remanded upon appeal. Export Lines sought to escape liability by setting up three exculpatory clauses in the bill of lading, the net effect of which was to excuse the carrier from any liability for loss or damage to the goods when they were not in its actual custody, or when they had been discharged onto a wharf or lighter. The exculpatory clauses relied upon were Clauses 1, 4 and 12 which are quoted in 318 F.2d at 722 n. 1, as follows:

> Clause 1: 'The Carrier shall not be liable in any capacity whatsoever for * * * loss of or damages to the goods occurring while the goods are not in the actual custody of the Carrier.'
>
> Clause 4: 'When the goods are discharged from the ship, as herein provided, they shall be at their own risk and expense; such discharge shall constitute complete delivery and performance under this contract and the Carrier shall be freed from any further responsibility.'
>
> Clause 12: 'All lighterage and use of craft in discharging shall be at the risk and expense of the goods.'

The Court said:

> Under Section 1 of the Harter Act, therefore, Clauses 1 and 12 of the present bill of lading, taken by themselves, would appear to be void insofar as they attempt to shift the risk of lighterage to the goods.
>
> Appellee relies primarily, however, upon Clause 4 of its bill of lading which purports to make *delivery* of the goods, and thus the termination of the carrier's statutory and contractual liability, concurrent with *discharge of the cargo* from the vessel, wherever that discharge may take place:

(Hereinafter the Court quotes portions of Clause 4).

The purpose of the clause is apparent. By equating 'discharge' with 'delivery' the carrier seeks to eliminate the operation of the Harter Act upon foreign trade. By fiat it seeks to secure immunity from liability which no combination of mere exculpatory clauses could achieve.'
*Id.* at 723 (emphasis in original).

The Court then said:

> The Harter Act does not define 'proper delivery.'

and

> It remains to be determined, therefore, whether such a delivery may be accomplished by the mere discharge of goods from the vessel, wherever that discharge may take place.[4]

*Id.* at 723.

The Court then said:

> Here, however, the lighter was not selected by the shipper nor by the consignee of the goods but by the carrier. Under these circumstances, a proper delivery requires, at the very least, the selection of, and the discharge of the goods onto a fit and safe lighter.
>
> This obligation, for the negligent performance of which the carrier bears full responsibility, might be found as an implied term of the bill of lading before us; but insofar as the lighterage clauses have been construed by both the parties and the Court below so as to relieve the carrier of this duty, we are constrained to hold the clauses null and void under Section 1 of the Harter Act.[5]

*Id.* at 724.

In sum, the Court held that under the Harter Act, Clauses 1, 4 and 12, to be invalid to relieve the defendant from the loss which had occurred before delivery. *See also Id.* at 724 n.2.

Regardless of whether the bill of lading in the case at bar is construed to require the

---

4. Thereafter the Court noted that in the Isthmian Steamship case the Court held that proper delivery under the Harter Act, in the absence of port customs and regulations to the contrary, constituted delivery at a fit and customary wharf. In Caterpillar the Court stated it was not required to determine whether proper delivery under a port-to-port contract may only be made by discharge onto a fit wharf. *Id.* at 724.

5. Where a loss occurred before delivery an exculpatory clause is void under the Harter Act and the carrier is liable without proof of negligence. *Id.* at 725 n.3.

defendant to deliver the cargo at San Croce Sull Arno or only to Leghorn, the cargo loss occurred before defendant had delivered the cargo at either place. The *Isthmian Steamship* and *Caterpillar Overseas* cases hold that when a contract of carriage provides that the carrier shall deliver cargo at a designated place, the Harter Act makes void any provisions in the contract which purport to relieve the carrier from responsibility for a loss which occurs prior to delivery. The bill of lading here involved contained such exculpatory clauses. Though factually distinguishable from the present case, the *Isthmian Steamship* and *Caterpillar Overseas* cases establish the principle which controls the instant one.

The defendant relies upon *Founder's Insurance Co. v. Pacific Far East Line, Inc.*, 1958 A.M.C. 901 (Cal.Super.1958) and *Bristol Myers Co. v. Steamship Pioneer Land*, 1957 A.M.C. 50 (S.D.N.Y.1956). Neither case refers to the Harter Act.

In the *Founder's Insurance Company* case, plaintiff had shipped cargo from Long Beach to Hong Kong on the Old Colony Mariner owned by defendant and at Hong Kong it was transshipped to Bombay, India by the Ucka, a vessel not owned by the defendant. The port of discharge was stated to be Hong Kong and there the defendant delivered the cargo to the Ucka. The Court held that the defendant was not liable for goods damaged while in the possession of the Ucka. It said,

> This for the reason that the bill of lading excluded any and all liability on the part of the defendant if the damage or loss arose while the shipment was not in the actual custody of the defendant carrier. Such a limitation is permissible, as I read Section 7 of the Carriage of Goods by Sea Act of 1936 (46 U.S.Code, sec. 1307).

The decision is understandable since the point of discharge in the bill of lading was Hong Kong where defendant had discharged the cargo and delivered it to the Ucka.

In the *Bristol Myers* case no decision was referred to. It is not necessary to distinguish *Bristol Myers* from the present case.

It was decided in 1956, prior to the decision in 1963 of *Caterpillar Overseas*. *Bristol Myers* was decided by a District Court in the Second Circuit whereas *Caterpillar Overseas* was decided by the Court of Appeals and, of course, it is the controlling authority.

Defendant also claims that the action should be dismissed under Clause 19 because of the failure of plaintiff to give notice of the loss or damage in writing within three days of the delivery of the cargo. Clause 19 provides:

19. NOTICE AND SUIT TIME:

> Notice of loss or damage or any other claim of whatsoever description and its general nature must be given in writing to the carrier or its agent at the port of discharge before or at the time of the removal of the goods into the custody of the person entitled to delivery; if the loss or damage is not apparent, the notice must be given within three days of the delivery. In any event, the carrier and the vessel shall be discharged from liability in any capacity unless suit is brought within one year after delivery or, if the goods are not delivered within one year after date they should have been delivered.

■ The container and its contents were stolen from the possession of the inland carrier on or about June 2, 1980, after the container and its contents had arrived but before delivery in Leghorn, Italy. (Aff. Benedetti, Doc. 10). On June 4, 1980, plaintiff was officially informed by defendant that the container was stolen. (¶ 5, Exh. D attached to Plaintiff's Brief, Doc. 14). Defendant asserts in its brief that written notice required by Clause 19 was not received until June 9, 1980, which was more than three days after the date of the theft and hence the notice was untimely and defendant's motion for summary judgment should be granted.

The argument is rejected. The three day notice requirement in Clause 19 has application only if the loss is not apparent. This is what Clause 19 says. Obviously the theft was apparent because on June 4, 1980,

plaintiff was officially informed by defendant that the container was stolen. Furthermore, under the circumstances, it would be inequitable to bar plaintiff's claim. *See Delaware Steel Co. v. Calmar Steamship Corp.*, 378 F.2d 386 (3d Cir. 1967).

The motion of defendant for summary judgment will be denied.